CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
APR 08 2013
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 3:12CR00032 |
| v. | REPORT AND RECOMMENDATION |
| CHRISTOPHER PATTERSON BISHOP, | |
| Defendant. | By: B. WAUGH CRIGLER<br>U.S. MAGISTRATE JUDGE |

In accordance with the provisions of Title 28 U.S.C. § 636(b)(3), and upon the defendant's consent, this case was referred to the undersigned to conduct a plea hearing.

**DEFENDANT'S RESPONSES TO RULE 11 INQUIRY**

The Grand Jury returned a multiple-count Indictment charging defendant in **Count One** with knowingly and intentionally conspiring to possess with intent to distribute, and to distribute fifty (50) or more kilograms of marijuana, a Schedule I controlled substance in violation of Title 21, United States Code, Section 841(a)(1), all in violation of Title 21, United States Code, Section 846; and in **Count Three** with knowingly and intentionally possessing with intent to distribute marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1). Defendant was not charged in Count Two of the indictment. Defendant has entered into a plea agreement to plead guilty to the charges in Counts One and Three.

On March 22, 2013, a plea hearing was conducted before the undersigned. The defendant was placed under oath and testified that his full legal name is William Christopher Patterson Bishop, he was born on July 30, 1967, and he is one year away from completing his degree. The defendant stated that he can read, write, and understand the English language. The defendant further stated that he was fully aware of the nature of the charges against him and the consequences of pleading guilty to those charges. The defendant informed the court that he was not under the influence of alcohol, medicine, or any other drugs, and that he suffered no

condition that impaired his ability to understand what the court was saying or the nature of the proceedings. The defendant testified that he had received a copy of the Indictment pending against him, and that he had fully discussed the charges therein and any defenses thereto, and his case in general, with his counsel. The defendant stated that he was pleading guilty of his own free will because he was, in fact, guilty. The defendant testified that he understood that the offenses in Counts One and Three are felonies, and if his plea is accepted, he will be adjudged guilty of those offenses. The defendant agreed that the government nevertheless had probable cause to bring the charges and that he would not be considered a prevailing party on any charge. The defendant further acknowledged that the plea agreement only binds the United States Attorney's Office for the Western District of Virginia and no other state or federal prosecutor or enforcement agency.[1]

The defendant acknowledged that the maximum statutory penalty for Count One is a $1,000,000 fine and/or imprisonment for a term of twenty years, together with a term of supervised release, that the maximum statutory penalty for Count Three is a $250,000 fine and/or imprisonment for a term of five years, together with a term of supervised release, and that there is no minimum term of imprisonment for either charge. The defendant was informed that parole has been abolished, and that if he is sentenced to prison, he will not be released on parole, but on supervised release, a violation of which could result in additional incarceration. The government is seeking forfeiture of $389,590.00 in U.S. Currency and 2608 Mills Road, Earlysville, Virginia 22936-3028, Assessor's Parcel No. 04500-00-00-05400. The defendant agreed to cooperate fully with the forfeiture of property provided that he may, within fourteen (14) days of sentencing, pay $100,000 in certified funds in lieu of forfeiting the real property. The defendant was informed that the forfeiture will survive his death or disability and cannot be abated by anything. The

---

[1] Defendant's counsel clarified that the plea agreement did not waive his client's rights to assert the defense of double jeopardy should prosecutions arise in other jurisdictions.

government is not seeking restitution and the defendant stated that he abandoned any interest in the items seized as evidence in the prosecution of this case. Finally, the defendant testified that he understood that, upon conviction, he will be required to pay a mandatory assessment of $100 per felony count of conviction.

The defendant was informed that under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued guidelines for judges to follow in determining the sentence in a criminal case. The defendant was then informed that the Sentencing Guidelines are no longer mandatory, but the sentencing judge may apply them in an advisory fashion in determining a reasonable sentence. The defendant testified that he and his counsel had discussed how the Sentencing Guidelines might apply in his case. The defendant also testified that he understood that the court would not be able to determine the applicable guideline range, for advisory purposes, until after a presentence report has been prepared and both parties have been given an opportunity to challenge the reported facts and application of the Guidelines. The plea agreement provides for a particular sentence of incarceration for a period of thirty-seven (37) months together with three (3) years of supervised release, which will be binding upon the court once the plea is accepted under Fed. R. Crim. P. 11(c)(1)(C). All other sentencing matters, including fines, will be decided by the sentencing judge. The defendant stated that he understood that the court may either accept or reject his plea agreement in the entirety but that, if the court does not accept the Rule 11(c)(1)(C) sentence, he would be entitled to withdraw his guilty plea.[2]

The defendant agreed that he had knowingly and voluntarily waived his rights to request or receive any records pertaining to the investigation or prosecution of his case, including any

---

[2] Prior to filing the plea agreement in open court, the parties corrected sentence two of section F.4 of the plea agreement providing that the defendant has a right to withdraw his plea, consistent with section B.1 of the agreement should the court not accept the Rule 11(c)(1)(C) agreement.

records that may be sought under the Freedom of Information Act or the Privacy Act of 1974. The defendant agreed he would submit a financial statement, if called upon to do so. He further agreed that from the time of his signing of the plea agreement, or the date he signs the financial statement, whichever is earlier, he would not convey anything of value without authorization from the government. The defendant acknowledged his monetary obligations under the plea agreement, which calls for such to be due immediately and subject to immediate enforcement.

The defendant acknowledged that he was waiving his right to have a jury determine beyond a reasonable doubt the facts alleged in the Indictment, including any facts related to sentencing. The defendant testified that he understood that he had the right to a trial by a jury, in addition to the following rights, which will be waived or given up if his guilty plea is accepted:

1. The right to plead not guilty and persist in that plea;
2. The right to a speedy and public jury trial;
3. The right to assistance of counsel at that trial and in any subsequent appeal;
4. The right to remain silent at trial;
5. The right to testify at trial;
6. The right to confront and cross-examine witnesses called by the government;
7. The right to present evidence and witnesses in his own behalf;
8. The right to compulsory process of the court;
9. The right to compel the attendance of witnesses at trial;
10. The right to be presumed innocent;
11. The right to a unanimous guilty verdict; and
12. The right to appeal a guilty verdict.

The defendant testified that he understood that, so long as the sentence was not more severe than expected, under the terms of the agreement he was waiving his rights to appeal, but that he was not waiving his right to appeal or have his attorney file a notice of appeal as to any issue which cannot, by law, be waived. The defendant acknowledged that he had agreed to waive his right to collaterally attack any order issued in the case, unless such attack is based on ineffective assistance of counsel or a constitutional defect in jurisdiction. The defendant was

informed that if he chose to appeal, the government could treat this as a breach of the plea agreement and recharge him.

The defendant testified that he understood that he may be deprived of valuable civil rights, such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess a firearm. The defendant stated that he was satisfied with the advice and representation given to him in this case by his counsel, and that he believed the representation had been effective. The defendant asked the court to accept his plea of guilty to Counts One and Three.

**THE GOVERNMENT'S EVIDENCE**

The defendant and the Government agreed to a Stipulation of Facts. The Stipulation of Facts having been filed in open court, the evidence presented therein regarding the offenses charged is as follows:

The offenses described below occurred within the Western District of Virginia. The following statement of facts briefly summarizes the facts and circumstances surrounding the defendant's criminal conduct. This statement does not contain all information obtained during the investigation or all facts applicable to an accurate presentence investigation report and sentencing guidelines calculation.

**Historical Testimony**

On October 15, 2012, Trooper Clint Craft of the Oklahoma Highway Patrol conducted a traffic stop on an RV in Sequoyah County, Oklahoma. Trooper Craft initiated the traffic stop on the RV for exceeding the posted speed limit and a partially-obstructed license plate. Trooper Craft identified the driver of the RV (hereinafter "CS-1") and determined the driver was the sole

occupant of the RV. Based on CS-1's nervous behavior, among other things, Trooper Craft obtained consent to search the RV and subsequently seized packaged marijuana with a gross weight of 73.7 kilograms, which had been concealed in the undercarriage of the RV (the "Marijuana"). CS-1 stated that he was delivering the marijuana to Charlottesville, Virginia, to deliver it to another individual (hereinafter, "CS-2").

CS-1 has known CS-2 for a number of years, and on or before August 18, 2011, CS-1 agreed with CS-2 to begin driving marijuana from California to Charlottesville, Virginia, where CS-2 would then sell the marijuana to his contacts, which ultimately included Christopher Patterson Bishop ("Bishop"). The government's evidence would have proven beyond a reasonable doubt that another co-conspirator, Kimberly Iesberts ("Iesberts"), often assisted CS-1 and CS-2 in the delivery of marijuana to Charlottesville, Virginia. For example, to facilitate the delivery of the Marijuana to Charlottesville, Virginia, in October of 2012, Iesberts helped load the Marijuana into the concealed storage compartments on CS-1's RV. Then, as CS-1 began traveling from California to Virginia, Iesberts acted as the point of contact between CS-1 and CS-2, keeping tabs on CS-1's progress and whereabouts nearly every day and reporting this information to CS-2.

**Controlled Delivery**

After his arrest in Oklahoma, CS-1 agreed to cooperate in making a controlled exchange of the Marijuana to CS-2 in Charlottesville, Virginia, where CS-2 was expecting delivery. On October 16, 2012, at approximately 8:15 p.m., Drug Enforcement Administration agents (hereinafter, "Agents"), led by Special Agent Jason Alznauer, outfitted CS-1 with a concealed transmitting/recording device, and at approximately 9:30 p.m., CS-1 met with CS-2 in

Charlottesville, Virginia. At this meeting, CS-2 told CS-1 that his marijuana customers did not want to do the transaction at night and that they would complete the transaction the following morning. CS-2 asked CS-1 to meet him at the same location the following morning to deliver the Marijuana.

On October 17, 2012, at approximately 8:22 a.m., CS-1 met with CS-2 at the agreed upon location in Charlottesville, Virginia, for the purpose of delivering the Marijuana to CS-2. At approximately 8:36 a.m., after the exchange had occurred, CS-2 drove away from the meeting location with the Marijuana. Shortly thereafter, Agents stopped CS-2 and arrested him, at which time the Marijuana was recovered from CS-2's vehicle. A laboratory test later revealed that the Marijuana had a net weight of approximately 55.076 kilograms.

CS-2 gave a statement to Agents in which he stated that he sold marijuana in Charlottesville, Virginia, at a price of $2900 to $3200 per pound, which corresponds to approximately $6393 to $7054 per kilogram. CS-2 stated that all of the Marijuana in the October of 2012 described above was to be purchased by someone named "Chris" at 2608 Rio Mills Road in Earlysville, Virginia (hereinafter, the "Residence"), which Agents identified as Bishop's home based on a search of public records. CS-2 acknowledged having interacted with "Chris" on multiple occasions. Agents showed CS-2 a photograph of Bishop, and CS-2 identified Bishop as the "Chris" that was to purchase the Marijuana. At approximately 12:00 p.m. on October 17, 2012, CS-2 made a monitored and recorded telephone call to Bishop's cellular telephone number. During the conversation, Bishop directed CS-2 to proceed to the Residence and to enter the Residence inside with a hidden garage door opener if Bishop was not

present. CS-2 had previously agreed with Bishop to sell the Marijuana to Bishop for U.S. Currency after arriving at the Residence.

At around 1:52 p.m., Agents executed a search warrant at the Residence and arrested Bishop. During a search of the Residence, Agents recovered, among other things, over $389,000.00 in U.S. currency, packaging materials, and a large set of digital scales. Bishop maintained a storage room attached to his home and accessed through the garage. In the storage room, there was a storage freezer, a large safe containing a large portion of the bulk cash referenced above, and approximately one kilogram of packaged marijuana.

**FINDINGS OF FACT**

Based on the evidence presented at the plea hearing, the undersigned now submits the following formal findings of fact, conclusions and recommendations:

(1) The defendant is fully competent and capable of entering into a plea agreement and making an informed plea;

(2) The defendant is aware of the nature of the charges and the consequences of his plea;

(3) The defendant knowingly and voluntarily entered a plea of guilty to Counts One and Three of the Indictment; and

(4) The evidence presents an independent basis in fact containing each of the essential elements of the offenses to which the defendant is pleading guilty.

**RECOMMENDED DISPOSITION**

Based upon the above findings of fact, the undersigned RECOMMENDS that the court accept the defendant's plea of guilty to Counts One and Three of the Indictment with the understanding that acceptance of the defendant's plea of guilty triggers the provisions of Fed. R. Crim. P. 11(c)(1)(C). The undersigned DIRECTS that a presentence report be prepared. The

undersigned RECOMMENDS that the proposed order of forfeiture be entered at the appropriate time. A sentencing hearing hereby is scheduled for June 24, 2013 at 2:00 p.m. before the presiding District Judge in Charlottesville.

**NOTICE TO PARTIES**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C): Within fourteen days (14) after being served with a copy of this Report and Recommendation, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. The presiding District Judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. The presiding District Judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the undersigned. The judge may also receive further evidence or recommit the matter to the undersigned with instructions.

Failure to file timely written objections to these proposed findings and recommendations within fourteen days could waive appellate review. At the conclusion of the fourteen-day period, the Clerk is directed to transmit the record in this matter to the presiding United States District Judge.

The Clerk is hereby directed to send a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: /s/ 
United States Magistrate Judge

4/8/13
Date